UNITED STATES, Appellee,

v.

Sergeant Mark A. MELLO, 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,
United States Army, Appellant.

ACMR 9202059.

U.S. Army Court of Military Review.

16 March 1993.

For Appellant: Major Fran W. Walter-house, JAGC, Captain Roy H. Hewitt, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Captain Jane F. Polcen, JAGC (on brief).

Before WERNER, GRAVELLE, and DELL'ORTO, Appellate Military Judges.

OPINION OF THE COURT

GRAVELLE, Judge:

In accordance with his pleas, the appellant was found guilty of attempting to unlawfully transfer a machine gun, looting, altering a public record, and smuggling,[1] in violation of Articles 80, 103, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 903, and 934 (1982). A military judge, sitting as a general court-martial, sentenced him to a bad-conduct discharge, to pay a fine of $1000.00, and to be reduced to Private E1. The convening authority approved the sentence, but in accordance with the terms of a pretrial agreement, suspended the fine for twelve months with provision for automatic remission.

■ The appellant asserts that his plea of guilty to looting is improvident because the military judge did not establish a sufficient factual basis for concluding that the appellant's seizure of the enemy weapon

---

1. The facts elicited during the providence inquiry showed that the appellant was a truck driver with a supply unit in support of combat forces during Operation Desert Storm. While on a supply mission into Iraq, the convoy stopped near a series of burnt-out Iraqi bunkers. While exploring one of these, Sergeant Mello found an AK47 assault rifle, which he removed from the abandoned bunker and hid in his truck. Later, he secreted the weapon in unit equipment being shipped back to Germany. When he was subsequently reassigned from Germany to the United States, he smuggled the weapon into the United States in his household goods shipment. He was caught with the weapon when he tried to sell it at a gun show in Colorado Springs, Colorado. At that time, he produced an altered Bureau of Alcohol, Tobacco and Firearms document in an attempt to show that he was entitled to possess the weapon.

**1068**

was "unlawful." We disagree with that assertion and find that the providence inquiry was sufficient on this point. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969); R.C.M. 910(e).

■ However, another aspect of this particular providence inquiry deserves attention. Prior to advising the appellant of the elements of the offense and explaining those elements, the military judge noted an apparent flaw in the Military Judges' Benchbook.[2] The Benchbook, at paragraph 3–59, includes in the definition of the words "looting" and "pillaging" the phrase *"by force and violence."* However, as the military judge pointed out, neither the Uniform Code of Military Justice nor the Manual for Courts–Martial[3] includes this phrase. He also referred counsel to *United States v. Manginell*, 32 M.J. 891 (A.F.C.M.R.1991), holding that "force and violence" is not required to establish the offense. The military judge said that he would not include the phrase in his explanation of the elements of the offense. The trial counsel and the defense counsel concurred in his decision.

The present Manual for Courts–Martial lists three elements of the offense of looting or pillaging:

(a) That the accused engaged in looting, pillaging, or looting and pillaging by unlawfully seizing or appropriating certain public or private property; (b) That this property was located in enemy or occupied territory, or that it was on board a seized or captured vessel; and (c) that the property was: (i) left behind, owned by, or in the custody of the enemy, an occupied state, an inhabitant of an occupied state, or a person under the protection of the enemy or occupied state, or who, immediately prior to the occupation of the place where the act occurred, was under the protection of the enemy or

occupied state; or (ii) part of the equipment of a seized or captured vessel; or (iii) owned by, or in the custody of the officers, crew, or passengers on board a seized or captured vessel.

MCM, 1984, Part IV, para. 27b(4).

Although this court has not addressed the issue of whether looting must be accomplished by force and violence, the military judge's ruling is consistent with *Manginell*. We have reviewed the background of Article 103, UCMJ, and the *Manginell* opinion, and conclude that the military judge in this case was correct in ruling that force and violence is not a required element of looting under Article 103, UCMJ. We therefore hold that the appellant's plea to the offense of looting was based on a correct explanation of the law.[4]

We have reviewed the remaining errors asserted by the appellate defense counsel and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WERNER and Judge DELL'ORTO concur.

---

2. Dep't of Army, Pam. 27–9, Military Judges' Benchbook (1 May 1982) [hereinafter the Benchbook].

3. Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984].

4. Judge Kastl's separate opinion in *Manginell* is worthy of note. We share his reservations concerning the breadth of the present definition of "looting," and concur in his suggestion that the Code Committee established under Article 146, UCMJ, examine this aspect of Article 103.